PRISCILLA MURPHY v. LEDELL S. McINTYRE

No. 834SC626

(Filed 3 July 1984)

1. Schools § 13.2— dismissal of teacher's aide—failure to exhaust administrative remedies

Where the action complained of by plaintiff teacher's aide was defendant school principal's evaluation of her that influenced the county school board not to rehire her, plaintiff's liberty interest in seeking and obtaining further employment was protected by the administrative remedy provided in G.S. 115-34, and plaintiff's action must be dismissed where she failed to exhaust her administrative remedies provided by that statute.

**2. Contracts § 32— malicious interference with contract—malice in legal sense**

In order to establish a prima facie case of malicious interference with contract, a plaintiff must establish that the defendant's actions were malicious in the legal sense, and proof of actual malice is not sufficient.

**3. Contracts § 31— malicious interference with contract—defendant need not be outsider**

One need not be an outsider in order to be held liable for malicious interference with contract.

**4. Contracts § 34; Schools § 13.2— dismissal of teacher's aide—malicious interference with contract by principal—insufficient evidence**

The evidence of plaintiff teacher's aide was insufficient to establish malice on the part of defendant school principal so as to make out a prima facie case of malicious interference with contract where it tended to show that defendant lowered plaintiff's performance evaluation without consulting or informing the teacher who had co-signed the evaluation form; the lowered evaluation resulted in plaintiff not being rehired for the following year; a principal was not required to consult the supervising teacher before changing a particular aide's evaluation; and defendant thus acted within the scope of his authority in lowering the evaluation of plaintiff's performance.

APPEAL by plaintiff from *Reid, Judge.* Judgment entered 11 January 1983 in Superior Court, DUPLIN County. Heard in the Court of Appeals 6 April 1984.

This is a civil action wherein plaintiff seeks compensatory and punitive damages from defendant for libel and slander and malicious interference with contract. Plaintiff also seeks equitable relief in the form of reinstatement to her job.

The essential facts here are not in dispute. Plaintiff was employed as a teacher's aide at Bland Elementary School in the Sampson County School System. She held that position for the 1979-80 and 1980-81 academic years. Defendant was the principal at Bland School. In February of 1981, plaintiff informed defendant that she would be unable to work for the remainder of the school year because of a need to care for her mother, who was seriously ill. At the suggestion of defendant, plaintiff requested and received a leave of absence from her job rather than resigning it. The leave of absence was suggested because it might improve plaintiff's chances for employment for the next school year.

Due to funding cutbacks and some curriculum changes, the Sampson County School System was forced to eliminate some positions, including teacher's aides. Teacher's aides were hired on a

yearly basis and the personnel cutbacks meant that some contracts would not be renewed for the 1981-82 school year.

In order to determine which aides to rehire for the 1981-82 school year, the Sampson County School System instituted a policy in May of 1981 whereby teacher's aides would be evaluated and the decision to rehire would be made on the basis of the evaluation. The aides were to be evaluated in the general areas of seniority, performance, and educational level. The evaluation was performed by filling out a form and providing specific information, much of it objective, about each teacher's aide: i.e., level of education, years employed, etc. Under the general area of performance, the following criteria were listed: "Arrives at work on time," "Attendance," "Follows directions," "Completes Assigned Task," "Rapport with teachers," "Rapport with students," and "Creativity." Each aide was to be ranked on each criterion. A ranking of "0" signified a poor rating, "1" was satisfactory, and "2" was excellent. The maximum score possible in the area of performance was 14. Each evaluation form contained a space for the signature of the principal and for the signature of the teacher to whom the aide was assigned during the school year.

On or about 1 June 1981, defendant and Ms. Betty Sykes, the teacher under whose supervision plaintiff had worked during the 1980-81 school year, completed the performance evaluation for plaintiff. After discussion with defendant, Ms. Sykes ranked plaintiff at "2," or excellent, in every category but attendance, where plaintiff received a ranking of "1". Plaintiff received a score of 13 out of 14 possible points. Ms. Sykes then signed the evaluation form.

After the evaluations had been turned in by the school principals, the Sampson County Board of Education made its decision as to how many aides to hire for the 1981-82 school year. Those aides who received a score of 18 or more points on the entire evaluation—combining the point totals for all of the general areas—were rehired. Plaintiff's point total for the entire evaluation was 17 and she was not rehired. Plaintiff asked the school superintendent of Sampson County why she was not rehired and was shown her evaluation form. In the performance section, plaintiff had received a rank of "0" on the "Follows directions" criterion, "1" on "Attendance" and "Rapport with teachers," and

"2" on the other items. After talking with Ms. Sykes in September 1981, plaintiff learned that rankings in the performance section of the evaluation had been changed since Ms. Sykes had signed the form.

On 12 November 1981, plaintiff filed this action alleging basically that the information on the evaluation form was false, that defendant had deliberately and maliciously misrepresented plaintiff's performance as a teacher's aide, and that he had acted in bad faith and with the intention of preventing plaintiff from being rehired for the 1981-82 school year. Plaintiff claimed that defendant's actions constituted libel and slander and malicious interference with contract and sought actual and punitive damages. Plaintiff also claimed that defendant's actions violated her constitutional due process rights and, under 42 U.S.C. § 1983, sought damages for mental anguish allegedly resulting from that violation.

Defendant answered, denying all of the material allegations in the complaint and specifically denying, *inter alia*, that plaintiff was entitled to any administrative remedy by defendant. Defendant asserted administrative privilege, official immunity and lack of jurisdiction as affirmative defenses. Defendant also asserted that plaintiff had no property or liberty interest in her job and could not claim a violation of her constitutional rights. Plaintiff responded, conceding that the court had no equitable jurisdiction in the case and that she possessed no property right in her job.

On 9 September 1982, defendant moved for summary judgment. Defendant's motion was granted as to the alleged constitutional violations but denied as to the claims of malicious interference with contract and libel and slander.

The matter came on for trial on 10 January 1983. At the close of plaintiff's evidence on 11 January 1983, defendant moved for a directed verdict. The motion was granted and plaintiff's remaining claims were dismissed. Plaintiff appealed.

*Thompson and Ludlum, by E. C. Thompson, III, for plaintiff appellant.*

*Chambers, Ferguson, Watt, Wallas, Adkins and Fuller, by James C. Fuller, Jr., for defendant appellee.*

EAGLES, Judge.

I

[1]　Plaintiff first assigns as error the trial court's entry of summary judgment for defendant with respect to plaintiff's claims that defendant had violated her constitutional rights to due process under the fifth and fourteenth amendments. Plaintiff concedes that she had no property right in her job but contends that she has a liberty interest in seeking and obtaining future employment. Plaintiff contends that she was deprived of this liberty interest in violation of her constitutional rights when the School Board decided not to rehire her without affording her an opportunity to contest her evaluation, the sole basis of the Board's decision.

We disagree. This issue was considered in *Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979). *Presnell* involved the dismissal of a public school employee by the principal on the basis of allegedly unsubstantiated statements. There, our Supreme Court held that, while there was no property right to the job, plaintiff did have a liberty interest in seeking and obtaining future employment. The Court held that that liberty interest was adequately protected by the administrative remedy prescribed in G.S. 115-34.

We note that G.S. 115-34 was repealed effective 1 July 1981 and replaced by G.S. 115C-45(c). Because plaintiff's right, if any, to an administrative remedy arose on 24 June 1981, 6 days before the effective date of the new statute, we assume without deciding that G.S. 115-34 applies to this case. We note also that G.S. 115C-45(c) does not vary materially from G.S. 115-34.

G.S. 115-34 provides for a two-step appeal process as follows:

An appeal shall lie from the decision of all school personnel to the appropriate county or city board of education.

. . .

An appeal shall lie from the decision of a county or city board of education to the superior court of the State in any action of a county or city board of education affecting one's character or right to teach.

Plaintiff argues that the present case is distinguishable from
*Presnell v. Pell* in that the decision not to rehire plaintiff was
made by the School Board while the employee in *Presnell* was
discharged by the principal. *Still v. Lance,* 279 N.C. 254, 182 S.E.
2d 403 (1971) holds that G.S. 115-34 has no application where the
decision complained of is the decision of a county board of educa-
tion. With this in mind, plaintiff argues that *Presnell v. Pell* does
not control and that the administrative remedy of G.S. 115-34
does not protect her liberty interest.

Plaintiff's argument, while accurately distinguishing *Presnell,*
overlooks the fact that the action complained of is not the School
Board's decision not to rehire her, but the principal's evaluation
of her that influenced the School Board's decision. We hold that
*Presnell v. Pell* does control here; plaintiff's constitutional claim
was properly dismissed for failure to exhaust her administrative
remedies. *See Snuggs v. Stanly Co. Dept. of Public Health,* 310
N.C. 739, 314 S.E. 2d 528 (1984) (plaintiff's claim under 42 U.S.C.
§ 1983 properly dismissed under G.S. 1A-1, Rule 12(b)(6) for fail-
ure to alleged lack of adequate State administrative remedies).

## II

Plaintiff next contends that it was error for the trial court to
allow defendant's motion for a directed verdict at the close of
plaintiff's evidence. Plaintiff argues that, viewed as required, her
evidence is sufficient to establish a *prima facie* case of malicious
interference with contract. Plaintiff argues that the evidence
shows that defendant's actions were wrongful and that they were
taken with the intent of adversely affecting her chances for
employment in the Sampson County School System for the 1981-
82 school year. Plaintiff submits that this evidence establishes the
element of malice necessary for a *prima facie* case of malicious in-
terference with contract and to withstand defendant's motion for
directed verdict. We disagree.

[2, 3] In order to establish a *prima facie* case of malicious in-
terference with contract, a plaintiff must establish that the de-
fendant's actions were malicious in the legal sense. Here, malice
means intentionally doing a wrongful act or exceeding one's legal
right or authority in order to prevent the making of a contract
between two parties. The action must be taken with the design of
injuring one of the parties to the contract or of gaining some ad-

vantage at the expense of a party. *Johnson v. Gray*, 263 N.C. 507, 139 S.E. 2d 551 (1965); *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954); *Coleman v. Whisnant*, 225 N.C. 494, 35 S.E. 2d 647 (1945). Plaintiff's evidence must show that defendant had no *legal* justification for his action; proof of actual malice is not sufficient. *Childress v. Abeles, supra.*

> Indeed, actual malice and freedom from liability for this tort may coexist. If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be. A "malicious motive makes a bad act worse but it cannot make that wrong which, in its own essence, is lawful."

*Id.* at 675, 84 S.E. 2d at 182, *quoting Bruton v. Smith*, 225 N.C. 584 at 586, 36 S.E. 2d 9 at 10 (1945). Recent cases hold that one need not be an outsider in order to be held liable for malicious interference with contract. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282, 79 A.L.R. 3d 651 (1976).

[4] Viewing the evidence in the light most favorable to the plaintiff, *see, e.g., Cook v. Export Leaf Tobacco Co.*, 50 N.C. App. 89, 272 S.E. 2d 883, *rev. denied*, 302 N.C. 396, 279 S.E. 2d 350 (1981); *Hart v. Warren*, 46 N.C. App. 672, 266 S.E. 2d 53, *rev. denied*, 301 N.C. 89, --- S.E. 2d --- (1980), there can be no doubt that defendant McIntyre lowered plaintiff's performance evaluation without consulting or informing Ms. Sykes, the teacher who had co-signed the form. It is likewise undisputed that the lowered evaluation resulted in plaintiff not being rehired for the 1981-82 school year. The trial court aptly characterized defendant's actions as "reprehensible," "underhanded," "below the board," and "not fair to the parties."

However, there is no evidence that defendant acted maliciously in the legal sense. The school superintendent, plaintiff's witness, testified on direct and cross-examination that, although consultation with the supervising teacher was expected and encouraged, the final responsibility for the evaluation rested with the principal. He further testified that, while the policy regarding the evaluations was not clearly spelled out, a principal was not required to consult the supervising teacher before changing a particular aide's evaluation. The superintendent testified on cross-examination that Mr. McIntyre had not "done anything wrong"

and had in fact complied with the policy of involving teachers in the evaluations.

The record does not disclose defendant's motives. However, his actions were within the scope of his authority and, for that reason, were not legally malicious. In view of defendant's position as principal, plaintiff's evidence permits the inference that defendant had the responsibility and, indeed, the obligation to act as he did, even though another person might have acted differently. *Dawson v. Radewicz*, 63 N.C. App. 731, 306 S.E. 2d 171 (1983).

Plaintiff's evidence fails to establish malice on the part of defendant sufficiently to make out a *prima facie* case of malicious interference with contract. The trial court properly granted defendant's motion for directed verdict with respect to this claim. Plaintiff's argument to the contrary is without merit.

### III

Although the trial court ruled that plaintiff had pleaded her claims of libel and slander sufficiently to withstand defendant's motion for summary judgment, plaintiff on appeal does not contest the directed verdict for defendant with respect to those claims. Plaintiff has apparently abandoned her exceptions and assignments of error insofar as they relate to the libel and slander issues and we will not consider them here. We hold that the trial court's grant of defendant's motion for directed verdict was proper in all respects and that plaintiff's action was properly dismissed.

For the reasons stated above, the judgment of the trial court is

Affirmed.

Judges WEBB and JOHNSON concur.