McCULLOUGH, Judge.
Data Consulting Group, LLC ("Data") and Nasko Dinev ("Dinev") appeal from an order of the trial court, denying its motion for attorneys' fees. For the reasons stated herein, we affirm in part and remand in part.
I. Background
On 12 July 2013, Data filed a complaint in Cabarrus County District Court against Weston Medsurg Center, PLLC ("Weston") d/b/a Azure Medical Spa ("Azure")-13 CVD 02099; Data Consulting Group, LLC v. Weston Medsurg Center, PLLC DBA Azure Medical Spa . Data alleged that Weston owed plaintiff $5,441.60, plus interest from 1 February 2013 at 8% annum, for breach of contract "regarding goods sold and delivered or services rendered." Data also alleged that it was entitled to attorneys' fees pursuant to N.C. Gen. Stat. § 6-21. Alternatively, Data argued that Azure owed $5,441.60 based on quantum meruit . On 1 October 2013, Weston and Azure filed motions to change venue and transfer division, an answer, and counterclaims, seeking damages in excess of $25,000.00 from Data for breach of contract, fraud, common law breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, unjust enrichment, conversion, and punitive damages.
On 30 July 2013, Ginger Blackwood ("Blackwood"), an employee of Weston and Azure, filed a small claims action in 13-CVM-20247 in Mecklenburg County, District Court Division-Small Claims. Blackwood sought unpaid commission in the amount of $2,938.51 from Weston.
On 30 September 2013, Weston and Azure filed a complaint against Data, Dinev, and Blackwood-13 CVS 17539; Weston Medsurg Center, PLLC, and Azure Medical Spa of Charlotte, PLLC, d/b/a Azura Medical Spa v. Ginger Blackwood and Nasko Dinev, individually and as agent/employee of Data Consulting Group. Weston and Azure alleged as follows: On 14 May 2012, Dinev, acting as a project manager for Data, tendered a quote for a service agreement with Data to Lisa Weston, the wife of Dr. Steven Weston, who owned Weston/Azure and provided healthcare to its patients. Lisa Weston handled the day-to-day operations of Weston/Azure. Dinev and Data were aware that Weston/Azure provided medical services to individuals as part of their businesses and required software and computers capable of handling confidential medical records, privileged and/or proprietary business information, and confidential e-mail. Dinev represented that he would install, maintain, and manage computers and software to facilitate the operations of Weston/Azure to protect the confidential and proprietary data of the businesses and its patients. Lisa Weston entered into a one-year service agreement with Dinev whereby Weston/Azure agreed to pay $500.00 per month for two scheduled onsite visits, phone and technical support, and additional work at quoted hourly rates of $125.00 per hour. On or about 23 June 2012, Blackwood was hired by Weston to serve as a medical billing/coding specialist. Blackwood entered into a written employment agreement with Weston and agreed to not "engage in any other business activity" and "not to reveal or threaten to reveal" confidential information or trade secrets. From June to November 2012, Blackwood developed a personal relationship with Dinev. In November 2012, Lisa Weston discovered that Blackwood, both independently and/or with the assistance of Dinev, violated her employment agreement and perpetrated fraud on Weston/Azure by: falsely reporting time entries and invoices; misappropriating and interfering with confidential business information, trade secrets, patient records, employee time, etc.; failing to bill patients, to process patients' change of addresses, and/or to respond to denials of payment in order to perform the billing and collection duties entrusted; entering into business, contractual, or employment relationships with unrelated and competitive interests; and exposing Weston/Azure to potential claims of HIPPA violations or other breaches of confidentiality.
Weston and Azure further alleged Blackwood solicited the assistance of Dinev to "cover up her wrongful activities and to destroy or delete electronic data, computer files and information belonging to Weston and Azur[e] from the computer system." Dinev actively assisted and/or conducted remote operations to delete data, sanitize or "wipe" clean the hard drive and laptop computers entrusted to Blackwood, willfully, intentionally, and covertly converting said personal, electronic and/or intellectual property for the personal use or benefit of Dinev, Data, and/or Blackwood. Dinev and Data were in breach of the agreement to provide monthly services for a fixed fee. The bills submitted by Dinev for Data were "false, inaccurate and unfair, in breach of contract, as a result of a failure of consideration or illusory contractual terms, intentional misrepresentation, and/or unfair and deceptive billing practices."
From 2 November 2012 until 5 November 2012, Dinev and Data, in conspiracy with Blackwood, agreed to unlawfully and wrongfully delete information and proprietary data belonging to Weston/Azure. Dinev also falsely represented that he was unaware of how Blackwood could have deleted such data and that the data could not be retrieved.
Based on the foregoing allegations, Weston/Azure brought forth the following claims against Blackwood and Dinev: breach of contract; fraud; common law breach of fiduciary duty; constructive fraud; unfair and deceptive trade practices; unjust enrichment; conversion; punitive damages; and declaratory judgment/in the nature of an interpleader.
The small claims matter was heard and Blackwood's complaint was dismissed with prejudice by order entered 1 October 2013. On 22 April 2014, the venue in 13 CVD 02099 was changed to Mecklenburg County. On 14 November 2014, the 13 CVD 02099 action was transferred to Mecklenburg County and restyled as "14-CVS-008092." On 14 November 2014, both actions-14 CVS 008092 and 13 CVS 17539-were consolidated. Data and Dinev served an offer of judgment, in the amount of $10.02, on 14 May 2015.
The consolidated actions were called to trial on 8 June 2015 and a verdict was delivered on 23 June 2015 in favor of Data.
Weston and Azure made motions for judgment notwithstanding the verdict and new trial which were both denied. Data and Dinev made a motion for attorneys' fees and the trial court took the attorneys' fees under advisement.
A final judgment, entered 11 September 2015, ordered that Data recover from Weston and Azure $5,541.60 plus pre-judgment and post-judgment interest for the breach of contract claim.
On 24 November 2015, the trial court entered an "Order Denying Motions for Attorney's Fees." The trial court found as follows, in pertinent part:
c. Dinev and [Data] party representative Ivan Ivanov acknowledged during their testimony the following:
i. [Data] and/or Dinev assisted [Blackwood] in removing data from her assigned laptop and work station computers that belonged to [Weston] and/or Medical Spa during the alleged term of the agreement;
ii. [Data] did not provide [Weston] or Medical Spa with two scheduled maintenance visits per month from December of 2012 through May, 2013, as provided in the written terms of the proffered agreement with "Azura Medical Spa" and included in the invoices to "[Weston.]"
....
v. Following inspection, no data or applications had been removed from the [Weston] and/or Medical Spa computers assigned to [Blackwood]; any applications and data removed from said computers could not be restored or recovered, but that software applications could be reinstalled; [[Weston] and Medical Spa also introduced some evidence showing that they were later able to restore and recover applications and data that had been removed or sought to be deleted from computers previously assigned to [Blackwood]].
....
d. [Blackwood] testified in pertinent part as follows (taken in the light most favorable to [Weston] ):
i. [Blackwood] acknowledged the execution of several written agreements regarding her employment with [Weston]....
....
iii. [Blackwood] acknowledged the conversion of documents and data belonging to her employer, [Weston], and even tendered the same as trial exhibits ...;
iv. [Blackwood] acknowledged requesting the deletion of computer data and authenticated email communications with [Dinev] of [Data] requesting technical assistance in removing similar information from the Weston-Azura laptop ...;
v. The documentary evidence tendered by [Weston]/Medical Spa when coupled with Blackwood's tendered trial exhibits and testamentary admissions demonstrated some evidence of [Blackwood's] alleged submission of false time reports....
The trial court concluded that the claims of Weston/Azure appeared to be based upon competent evidence and rational arguments and thus, were not frivolous, wrongful, done without just cause or excuse, done as a result of ill will or malicious. The trial court further concluded that although Data, Dinev, and Blackwood were each prevailing parties, they were not entitled to attorneys' fees under N.C. Gen. Stat. §§ 75-16.1, 75-1.1, or 1D-45. The trial court found that because there was some evidence presented by Weston/Azure to support an unfair and deceptive trade practices claim as to Data and Dinev, Data and Dinev's motion for attorneys' fees under N.C. Gen. Stat. § 75-16.1 was denied. The trial court also found that because there was some evidence in support of Weston/Azure's claims for punitive damages, the motion for attorneys' fees under N.C. Gen. Stat. § 1D-45 was denied.
Data and Dinev appeal from this order.
II. Discussion
On appeal, Data and Dinev argue that the trial court erred by denying attorneys' fees under N.C. Gen. Stat. §§ 1D-45 and 75-16.1. They also argue that the trial court erred by failing to rule on their motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 68. We address each argument in turn.
A. N.C. Gen. Stat. § 1D-45
In their first argument on appeal, Data and Dinev contend that the trial court erred in denying attorneys' fees pursuant to N.C. Gen. Stat. § 1D-45. Data and Dinev argue that Weston and Azure's punitive damages claims were frivolous and that they litigated with malice. We disagree.
N.C. Gen. Stat. § 1D-45 provides as follows:
The court shall award reasonable attorneys' fees, resulting from the defense against the punitive damages claim, against a claimant who files a claim for punitive damages that the claimant knows or should have known to be frivolous or malicious . The court shall award reasonable attorney fees against a defendant who asserts a defense in a punitive damages claim that the defendant knows or should have known to be frivolous or malicious.
N.C. Gen. Stat. § 1D-45 (2015) (emphasis added).
"[A] claim for punitive damages is 'frivolous' where its 'proponent can present no rational argument based upon the evidence or law in support of it.' Furthermore, a claim is 'malicious' where 'it is wrongful and done intentionally without just cause or excuse or as a result of ill will.' " Philips v. Pitt County Memorial Hospital , --- N.C. App. ----, ----, 775 S.E.2d 882, 884 (2015) (citing Rhyne v. K-Mart Corp. , 149 N.C. App. 672, 689, 562 S.E.2d 82, 94 (2002) ). The trial court's decision to award or deny fees under this statute "will not be disturbed on appeal unless the trial court has abused its discretion." Area Landscaping, LLC v. Glaxo-Wellcome, Inc. , 160 N.C. App. 520, 528, 586 S.E.2d 507, 513 (2003).
In the present case, the trial court made detailed findings denying an award of attorneys' fees pursuant to N.C. Gen. Stat. § 1D-45. The trial court found, inter alia , that Dinev and Data party representative, Ivan Ivanov, admitted during their testimony that Data and/or Dinev assisted Blackwood in removing data from her work laptop and work station computers that belonged to Weston during the term of the agreement, that Data did not provide Weston with two scheduled maintenance visits per month from December 2012 through May 2013 as provided in their agreement, Data never transferred the domain name to Weston despite acknowledgement of ownership and written demand by Weston during the term of the agreement, that neither Data nor Dinev could identify the individual who allegedly communicated an oral instruction to discontinue monthly service calls to Weston or Azure, and that Data renewed the domain name belonging to Weston after the contract had terminated and billed for such service after having received a written demand for return of the domain name to Weston.
The trial court concluded that the claims of Weston and Azure "appeared to be based upon competent evidence and rational argument and were thus not 'frivolous;' " and that the claims of Weston and Azure "were asserted in response to the initial claims" of Data and Blackwood and "did not appear to be wrongful, done without just cause or excuse, nor as a result of ill will, and were therefore not 'malicious.' " Ultimately, the trial court concluded that pursuant to N.C. Gen. Stat. § 1D-45, because it had found "some evidence" in support of Weston and Azure's claims of "egregiously wrongful conduct by Blackwood and [Data]/Dinev," the claims of Weston and Azure were neither frivolous nor malicious and that the motions for attorneys' fees should be denied.
After carefully examining the record, we believe competent evidence supports these findings and that the findings support the trial court's conclusions of law. Accordingly, we hold that the trial court did not abuse its discretion in denying Data and Dinev attorneys' fees pursuant to N.C. Gen. Stat. § 1D-45.
B. N.C. Gen. Stat. § 75-16.1
In their second argument on appeal, Data and Dinev assert that the trial court erred by denying their motion for attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.
N.C. Gen. Stat. § 75-16.1 provides as follows:
In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
(2) The party instituting the action knew, or should have known, the action was frivolous and malicious.
N.C. Gen. Stat. § 75-16.1 (2015) (emphasis added). Thus, "this statutory provision allows a trial court to award attorney's fees to a prevailing defendant if the plaintiff knew, or should have known, the action was frivolous and malicious." McKinnon v. CV Indus. , 228 N.C. App. 190, 199, 745 S.E.2d 343, 350 (2013). "The decision whether or not to award attorney fees under section 75-16.1 rests within the sole discretion of the trial judge." Faucette v. 6303 Carmel Rd., LLC , --- N.C. App. ----, ----, 775 S.E.2d 316, 325 (2015).
On appeal, Data and Dinev argue that because no facts asserted in Weston and Azure's claim support a successful UDTP claim, the claim was frivolous at the time of filing. In addition, Data and Dinev assert that because it was not a "legitimate" claim, it was malicious for Weston and Azure to litigate the UDTP claim.
We first note that even if the facts alleged in Weston and Azure's complaint were insufficient to support a valid UDTP claim, Data and Dinev have failed to cite to any authority indicating that this fact necessarily renders Weston and Azure's claim frivolous or malicious. Here, the trial court made numerous findings regarding conduct by Data and/or Dinev: that Data and/or Dinev assisted Blackwood in removing data from computers that belonged to Weston and/or Azure; that Data failed to provide Weston or Azure with scheduled maintenance visits; and that Data never transferred the domain name to Weston and renewed the domain name after the contract had terminated and billed for such service. The trial court then concluded that a UDTP claim was "applicable to the conduct alleged by Weston-Azura as to [Data]/Dinev as to which (in the light most favorable to Weston-Azura) there was some evidence presented[ ]" and that in its discretion, it denied the motions for attorneys' fees under N.C. Gen. Stat. § 75-16.1. Competent evidence in the record supports the trial court's findings, which in turn support the trial court's conclusion of law. Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.
C. N.C. Gen. Stat. § 1A-1, Rule 68
In their last argument on appeal, Data and Dinev contend that the trial court erred by failing to rule on their motion for fees and costs pursuant to N.C. Gen. Stat. § 1A-1, Rule 68.
Rule 68 provides as follows:
(a) Offer of judgment.-At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted within 10 days after its service shall be deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.
N.C. Gen. Stat. § 1A-1, Rule 68(a) (2015).
The record indicates that on 14 May 2015, Data and Dinev served Weston and Azure an "Offer of Judgment" that stated that they "offer Judgment to be entered against them for all claims of Weston Medsurg Center, PLLC and Azure Medical Spa of Charlotte, PLLC in the amount of Ten Dollars and two cents ($10.02)." The offer of judgment was filed 23 June 2015. Data and Dinev made an oral motion for costs pursuant to Rule 68 at a 23 June 2015 hearing.
The trial court made no findings or conclusions regarding Data and Dinev's Rule 68 motion in its 24 November 2015 order. Accordingly, we remand this case to the trial court for a determination as to whether Data and Dinev are entitled to costs pursuant to N.C. Gen. Stat. § 1A-1, Rule 68.
III. Conclusion
We affirm the 24 November 2015 order of the trial court, denying Data and Dinev's motion for attorneys' fees pursuant to N.C. Gen. Stat. § 1D-45 and N.C. Gen. Stat. § 75-16.1. Because the trial court failed to rule on Data and Dinev's Rule 68 motion, we remand to allow the trial court to rule upon the motion.
AFFIRMED IN PART; REMANDED IN PART.
Report per Rule 30(e).
Judges DILLON and TYSON concur.